IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARK EDWARD GROUNDS,

        Plaintiff,

v.                                         CIVIL ACTION NO.   2:22-cv-00065

PANTHER CREEK MINING, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Panther Creek Mining, LLC's Motion to Dismiss or, in the Alternative, Compel Arbitration* (Document 6), the *Memorandum of Law in Support of Panther Creek Mining, LLC's Motion to Dismiss or, in the Alternative, Compel Arbitration* (Document 7), the *Plaintiff's Response to Motion to Dismiss or, in the Alternative, to Compel Arbitration* (Document 11), and the *Reply in Support of Panther Creek Mining, LLC's Motion to Dismiss or, in the Alternative, Compel Arbitration* (Document 12). For the reasons stated herein, the Court finds that the motion should be denied.

**FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Plaintiff Mark Edward Grounds filed his *Complaint* (Document 1-1) against his former employer, Defendant Panther Creek Mining, LLC in the Kanawha County Circuit Court on or about December 16, 2021. Mr. Grounds worked at the Speed or American Eagle Mine from August 21, 2005, through January 27, 2020. Beginning in or around November 2015, his position was the day-shift longwall electrician, and in 2019, he earned $109,508.25. After a December

1

30, 2019, injury at home that required amputation of the tip of a finger, he received short-term disability. When he was released to full duty on January 22, 2020, management discharged him and terminated his welfare benefits. He alleges that the company failed to replace certain personal tools that were damaged at work. He also alleges that, while other employees were laid off around the same time, the company retained younger and less experienced employees.

Although the Complaint contains several counts, prior to removal, the parties entered a *Stipulation of Partial Dismissal* (Document 3-1), agreeing that only counts Four and Five, alleging claims for ERISA Sec. 510 Interference and ERISA Breach of a Fiduciary Duty, respectively, would remain pending. The Plaintiff agreed to dismiss the other counts in light of the Arbitration Agreement he had signed, attached as the Defendant's Exhibit 1. (Document 6-1.)

The Arbitration Agreement provides in bold:

> NOTICE: THIS AGREEMENT IS SUBJECT TO MANDATORY ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT ('ACT') AND ITS RELATED STATE COUNTERPARTS. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE EMPLOYMENT RELATIONSHIP SHALL BE ARBITRATED PURSUANT TO THE ACT. BY SIGNING THIS AGREEMENT, THE EMPLOYEE UNDERSTANDS THAT HIS OR HER CLAIMS WILL BE SUBJECT TO ARBITRATION.

(Arbitration Agreement at 1.)

As relevant to the instant dispute, the Agreement also contains a "Coverage" section, which provides as follows:

> This Agreement between the Parties to arbitrate all disputes or claims of any kind includes, but is not limited to, claims under Title VII of the Civil Rights Act of 1964 and the West Virginia Human Rights Act and claims of unlawful discrimination, retaliation or harassment based upon race, national origin, ancestry, disability, religion, sex, age, workers' compensation claims or history,

2

> veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from any contract, tort claims, or claims based on public policy. This Agreement does not, however, limit any right to file a charge with or assist any government agency, including the U.S. Equal Employment Opportunity Commission and the National Labor Relations Board, or the right to file a claim for workers' compensation benefits or unemployment insurance compensation; nor does it apply to employment benefit plans regulated by the Employee Retirement Income Security Act.

(Arbitration Agreement at 1.)

Mr. Grounds signed the Arbitration Agreement on July 18, 2018. The Defendants moved to compel arbitration and to dismiss or stay the suit. Briefing on the motion is now complete.

## APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that:

> A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction….shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (internal citation omitted).

Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate

>or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). A district court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). To challenge the validity of an arbitration clause within a contract a party must specifically challenge the arbitration clause, rather than the contract as a whole. *See Buckeye Check Cashing, Inc v. Cardegna,* 546 U.S. 440, 445 (2006). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

## DISCUSSION

The Defendant argues that questions regarding the validity and applicability of the Arbitration Agreement must be decided by the arbitrator, based on the language in the Agreement specifying that "any" and "all" legal disputes between the parties are subject to arbitration. In addition, it contends that the Arbitration Agreement covers the dispute at issue, including the ERISA claims. It argues that the exceptions to the arbitration clause permit administrative claims or proceedings prior to suit, but not lawsuits. According to the Defendant, the Arbitration Agreement permits the plaintiff to pursue relief with the Claims Administrator pursuant to ERISA,

and "Plaintiff's lawsuit against Panther Creek…does not relate to a claim's decision by his plan administrator; rather, Plaintiff's claims relate to an employment decision made by Defendant and whether it constituted unlawful interference under ERISA." (Def.'s Mem. at 9.) Because the claims are covered by the Arbitration Agreement, the Defendant argues that dismissal is appropriate.

The Plaintiff argues that the Arbitration Agreement, by its unambiguous terms, does not apply to ERISA claims, and any delegation clause is likewise inapplicable to ERISA claims. He further contends that construing the language of the agreement to require arbitration of gateway issues or ERISA claims would be unconscionable, given his relative lack of sophistication compared to his employer and the language of the agreement. He argues that ERISA claims are particularly ill-suited to arbitration because "strong federal policy and economic interests favor[] uniformity of rules on employee benefits," and those policy interests would be hampered by unreviewable decisions by arbitrators.

It is well-established that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). An agreement to delegate such gateway questions must "clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (internal quotation marks omitted) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The Supreme Court recently considered an arbitration agreement with language stating that "[A]ny dispute arising under or related to this Agreement (except for actions seeking injunctive

5

relief…) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). Because the plaintiffs sought injunctive relief, in part, they contended that the arbitration clause was inapplicable to their claims. The lower courts had found that the defendants' invocation of the arbitration clause was wholly groundless, and courts could determine the threshold question of arbitrability in such circumstances. The Supreme Court remanded, finding that "The [Federal Arbitration] Act does not contain a 'wholly groundless' exception, and we are not at liberty to rewrite the statute passed by Congress and signed by the President. When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* The Court did not decide whether the language of the arbitration agreement in fact delegated questions of arbitrability to the arbitrator, instead it remanded for consideration of that issue.

The Arbitration Agreement herein provides that "any controversy or claim arising out of or related to this Agreement and/or the employment relationship shall be arbitrated pursuant to the Act." (Arbitration Agreement at 1.) The Fourth Circuit has found that "general contractual language" is not sufficient to delegate "questions of arbitrability to the arbitrator." *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 265 (4th Cir. 2019) (unpublished). "[B]road arbitration clauses that generally commit all interpretive disputes 'relating to' or 'arising out of' the agreement do not satisfy the clear and unmistakable test." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999); *see also Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 103 (4th Cir. 2012) (finding language providing for arbitration of "any dispute alleging a breach of this [Jobs Agreement]" insufficient, and collecting prior decisions finding

language providing for arbitration of "any grievance of dispute regarding the terms of this agreement" and "any question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement" to be insufficient to delegate questions of arbitrability) (internal punctuation and citations omitted).  In *Carson*, the Fourth Circuit noted that "[t]hose who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect."  *Carson*, 175 F.3d at 330–31.

Because the language of the purported delegation clause in the Arbitration Agreement is strikingly similar to that which the Fourth Circuit has specifically found insufficient to delegate questions of arbitrability, the Court finds that the Agreement fails to clearly and unmistakably delegate gateway issues.  Thus, it is appropriate for the Court to determine whether the Arbitration Agreement requires arbitration of the ERISA claims presented by the Plaintiff.

That determination requires straightforward contract interpretation based on the language of the "Coverage" paragraph in the Arbitration Agreement.  That paragraph includes the following language: "This Agreement does not, however, limit any right to file a charge with or assist any government agency…nor does it apply to employment benefit plans regulated by the Employee Retirement Income Security Act."  (Arbitration Agreement at 1.)  Count Four of the Plaintiff's Complaint is brought under ERISA Section 510, 29 U.S.C. § 1140, and alleges that "[t]he Defendant's termination of Plaintiff's employment was motivated, in whole or in substantial part, by Plaintiff's exercise of his rights under the Defendant's employee benefit plans and/or for the purpose of interfering with Plaintiff's attainment of rights under the Defendant's employee benefit plans…specifically the Plaintiff's right to receive short-term disability and medical

7

benefits, among others, relating to Plaintiff's 12/30/19 finger injury." (Compl. at ¶ 75.) Count Five is a claim for breach of fiduciary duty under 19 U.S.C. § 1104(a)(1)(A)(i) and § 1132(a). Therein, the Plaintiff alleges that the Defendant "breached its fiduciary duty by discharging the Plaintiff in an attempt to avoid paying disability and medical benefits under the relevant plans." (*Id.* at ¶ 81.) These are clearly claims involving "employee benefit plans regulated by the Employee Retirement Income Security Act." (Arbitration Agreement at 1.) If the Defendant intended to exempt only administrative challenges to claims decisions by employee benefit plans, that intent is not reflected in the unambiguous language of the Agreement—which the Court must rely on to determine the parties' mutual intent and agreement. Therefore, the Court finds that the Arbitration Agreement does not apply to Counts Four and Five of the Plaintiff's Complaint, and the motion to compel arbitration should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Panther Creek Mining, LLC's Motion to Dismiss or, in the Alternative, Compel Arbitration* (Document 6) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 29, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8